IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

P.L.U.S. BROKERAGE, INC. *et al.*,

     Plaintiffs,

        v.

JONG EUN KIM,

     Defendant.

CIVIL NO.: WDQ-11-3162

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

P.L.U.S. Brokerage, Inc. ("PLUS"), Ryeco LLC ("Ryeco"), Lancaster Foods, LLC ("Lancaster Foods"), and Fred S. Chesser & Co., Inc. ("Chesser") (collectively "plaintiffs") sued Jong Eun Kim under the Perishable Agricultural Commodities Act of 1930 ("PACA" or).[1]  Pending are the plaintiffs' motions for summary judgment and Kim's cross motion for summary judgment.  For the following reasons, the plaintiffs' motions will be granted. Kim's motion will be denied.

---

[1] Codified at 7 U.S.C. §§ 499a-499t.

I.   Background[2]

The facts are not in dispute.[3]   The plaintiffs are all
wholesale buyers and sellers of produce.[4]   Kim is the sole owner,
officer, and director of Kimberly's Farm, Inc. ("Kimberly's
Farm"), and is solely responsible for its management and
control.   ECF No. 18-7 ¶¶ 15-18.   Kimberly's Farm is a dealer,
commission merchant, and broker in sales and purchases of
produce.   ECF No. 23-3 at 4 ¶ 3.

Between January 26, 2011, and March 10, 2011, PLUS sold
produce to Kimberly's Farm for $87,673.60.   ECF No. 18-4 ¶ 9;
*see* ECF Nos. 18-5, 18-6.   The invoices list a payment term of
"Net 30 Days" and state that the commodities are subject to the
trust provisions of PACA.   ECF No. 18-5.   PLUS mailed the
invoices to Kimberly's Farm on the shipment date of each
quantity of produce.   ECF No. 18-4 ¶ 14.   None of the invoices
was returned undeliverable, and PLUS had no indication that the

---

[2] On cross motions for summary judgment, "each motion [is]
considered individually, and the facts relevant to each [are]
viewed in the light most favorable to the non-movant."   *Mellen
v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003).

[3] Although Kim asserts that there is a genuine dispute of
material fact concerning the plaintiffs' invoices, there in fact
is none.   *See infra* Part II.B.2.

[4] *See* ECF Nos. 19-4 ¶ 8, 20-4 ¶ 8, 21-4 ¶ 8, 22-4 ¶ 4.   Produce
is a common term for "perishable agricultural commodity."   *See
id.*; *Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 596
(4th Cir. 2010).

2

invoices were not received. *Id.* ¶ 15. Kimberly's Farm did not pay the invoices. *Id.* ¶ 16.

Between February 10, 2011, and March 11, 2011, Ryeco sold produce to Kimberly's Farm for $58,753.50. ECF No. 19-4 ¶ 9; *see* ECF Nos. 19-5, 19-6. The invoices list a payment term of "PACA Payment terms – Net 10 days acceptance" and state that the commodities are subject to the trust provisions of PACA. ECF No. 19-5. Ryeco mailed the invoices to Kimberly's Farm within three days of the shipment date of each quantity of produce. ECF No. 19-4 ¶ 14. None of the invoices was returned undeliverable, and Ryeco had no indication that the invoices were not received. *Id.* ¶ 15. Kimberly's Farm did not pay the invoices. *Id.* ¶ 16.

From February 24, 2011, to March 26, 2011, Lancaster Foods sold produce to Kimberly's Farm for $147,056.20. ECF No. 20-4 ¶ 9; *see* ECF Nos. 20-5, 20-6. The invoices list a payment term of "21-DAYS" and state that the commodities are subject to the trust provisions of PACA. ECF No. 20-5. Each invoice was given to Kimberly's Farm at the time of delivery. ECF No. 20-4 ¶ 14. Kimberly's Farm did not pay the invoices. *Id.* ¶ 15.

From January 31, 2011, to March 23, 2011, Chesser sold produce to Kimberly's Farm for $22,501.50. ECF No. 21-4 ¶ 9; *see* ECF Nos. 21-5, 21-6. The invoices list no payment term but state that the commodities are subject to the trust provisions

3

of PACA.  ECF No. 21-5.  Chesser mailed the invoices to
Kimberly's Farm within three days of the shipment date of each
quantity of produce.  ECF No. 21-4 ¶ 13.  None of the invoices
was returned undeliverable, and Chesser had no indication that
the invoices were not received.  *Id.* ¶ 14.  Kimberly's Farm did
not pay the invoices.  *Id.* ¶ 15.  Kimberly's Farm owed the
plaintiffs $315,984.80.  *See* ECF No. ECF No. 1 ¶ 26.

Kim explains that Kimberly's Farm did not pay the invoices
because Kimberly's Farm could not collect nearly $250,000.00 in
receivables from EE Mart and Fresh World VA-A, Inc. ("Fresh
World").[5]  ECF Nos. 18-7 ¶ 20, 22-3.  Kim has offered no
explanation for the remainder of the money owed to the
plaintiffs.  On June 10, 2011, Kimberly's Farm filed a voluntary
petition for relief under Chapter 7 of the Bankruptcy Code in
the United States Bankruptcy Court for the District of Maryland.
ECF No. 23-3 at 4 ¶ 4.  The bankruptcy schedules list $2,365.50

---

[5] Kim has submitted complaints filed with the Secretary of
Agriculture stating that Kimberly's Farm was owed $42,839.00 by
Fresh World and $179,283.00 by EE Mart as of July 2009 and March
2009 respectively.  ECF No. 22-3.  There is no evidence of Fresh
World's or EE Mart's current status, but Kim has stated that "EE
Mart and Fresh World hold a substantial amount of assets and
have yet to pay Kimberly's Farm."  ECF No. 23-3.  Similarly,
there is no evidence that the amount of the unpaid receivables
has changed.

in personal property[6] and $504,256.05 in unsecured claims.[7]  ECF
No. 18-8 at 2.

On November 7, 2011, the plaintiffs sued Kim under PACA for
(1) breach of fiduciary duty and (2) conversion and unlawful
retention of PACA trust assets.[8]  ECF No. 1 ¶¶ 19-32.  On
December 12, 2011 Kim answered.  ECF No. 6.  On May 11, 2012,
each plaintiff moved for summary judgment.  ECF Nos. 18-21.  On
May 29, 2012, Kim filed his cross motion for summary judgment
and opposition to the plaintiffs' motions.  ECF No. 22.  On June
4, 2012, Kim responded to the plaintiffs' requests for admission
under Fed. R. Civ. P. 36.  ECF No. 23-3 at 9.  On June 14, 2012,
the plaintiffs jointly opposed and replied, attaching Kim's
answers to the requests for admission.  ECF No. 23.  Kim did not
reply.

II.  Analysis

A.  Legal Standard

The Court "shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the

---

[6] The nature of this personal property is not in the record.

[7] All the unsecured claims are listed as "Trade debt."  See ECF
No. 19-8 at 5-7.  The plaintiffs are some, but not all, of the
creditors.  See id.

[8] On January 30, 2012, the plaintiffs moved to amend the
complaint to correct the dates of the produce deliveries.  ECF
No. 13.  On February 23, 2012, the motion was granted.  ECF No.
14.

movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a).[9]  In considering the motion, the judge's function
is "not . . . to weigh the evidence and determine the truth of
the matter but to determine whether there is a genuine issue for
trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249
(1986).  A dispute about a material fact is genuine "if the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most
favorable to . . . the nonmovant and draw all reasonable
inferences in [its] favor," *Dennis v. Columbia Colleton Med.
Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court
must abide by the "affirmative obligation of the trial judge to
prevent factually unsupported claims and defenses from
proceeding to trial," *Bouchat v. Balt. Ravens Football Club,
Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal
quotation marks omitted).

When cross motions for summary judgment are filed, "each
motion must be considered individually, and the facts relevant
to each must be reviewed in the light most favorable to the

---

[9] Rule 56(a), which "carries forward the summary-judgment stan-
dard expressed in former subdivision (c)," changed "genuine
'issue' [to] genuine 'dispute,'" and restored the word "'shall'
. . . to express the direction to grant summary judgment." Fed.
R. Civ. P. 56 advisory committee's note.

nonmovant." *Mellen*, 327 F.3d at 363 (*citing Rossignol v. Voohaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

    B.   Plaintiffs' Motions

    The plaintiffs assert that they are entitled to summary judgment because there is no genuine dispute of material fact, and Kim is personally liable for Kimberly Farm's failure to preserve trust assets.  ECF No. 18-2 at 14.

    1.   PACA Trusts

    Congress enacted PACA in 1930 "to suppress unfair and fraudulent business practices in the marketing of perishing commodities." *Nickey Gregory Co., LLC v. AgriCap LLC*, 597 F.3d 591, 594 (4th Cir. 2010).  PACA was amended in 1984 "to provide unique credit protection to sellers of perishable agricultural commodities." *Id*.

    Under the 1984 amendments, sale of perishable commodities may create a trust for the benefit of the sellers of (1) the commodities, (2) the inventory or products derived from the commodities, and (3) any receivables or proceeds from further sale.  7 U.S.C. § 499e(c)(2); *see Nickey Gregory*, 597 F.3d at 595.  The purchasers must "maintain the trust by retaining the commodities or their proceeds" until the sellers are paid. *Nickey Gregory*, 597 F.3d at 595.  The trust is a "nonsegregated 'floating' trust.  Commingling of trust assets is contemplated." 7 C.F.R. § 46.46(b).  The sellers' right of recovery "is

superior to the right of all other creditors, including secured creditors," and the assets do not become a part of the bankruptcy estate. *Nickey Gregory*, 597 F.3d at 595; *see* 7 U.S.C. § 499e(c)(1).

"General trust principles govern PACA trusts unless the principle conflicts with PACA." *Nickey Gregory*, 597 F.3d at 595. The trust must be maintained "in a manner that such assets are freely available to satisfy outstanding obligations to sellers." 7 C.F.R. § 46.46(d)(1). Failure to maintain the trust, including dissipation of assets, is unlawful. *See* 7 U.S.C. § 499b(4); 7 C.F.R. § 46.46(d)(1).[10] This Court has jurisdiction over "actions by trust beneficiaries to enforce payment from the trust." 7 U.S.C. § 499e(c)(5).

Sellers must meet certain conditions to be eligible for the protection of a PACA trust. Under PACA, buyers must make "full payment promptly." 7 U.S.C. § 499b(4). The general deadline is ten days after receipt of the produce. 7 C.F.R. § 46.22(aa). Buyers and sellers can agree to more time in writing. *Id.* § 46.2(aa)(11). The maximum time is 30 days. *Id.* § 46.46(e)(2).

To preserve the trust benefits, the seller may file a notice of intent including, (1) the name and address of the

---

[10] Dissipation is "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." 7 C.F.R. § 46.46(a)(2).

beneficiary and debtor, (2) the date of transaction, commodity, invoice price, and terms of payment (if appropriate), (3) the date of receipt of notice that payment has been dishonored (if appropriate), and (4) the amount past due and unpaid. *Id.* § 46.46(f)(1). Notice of the intent to preserve the trust must generally be given within 30 days. *Id.* § 46.46(f)(2). Alternatively, the seller may use an invoice to preserve the trust benefits if it includes (1) the terms of payment, if they differ from the standard, and (2) the statement:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

7 C.F.R. § 46.46(f)(3).

2.   Kim's Admissions

Fed. R. Civ. P. 36 permits parties to serve on any other party a request to admit the truth of matters relevant to the case including "facts, the application of law to fact, or opinions about either" and the genuineness of documents. Fed. R. Civ. P. 36(a)(1). Purely legal matters, not connected to the facts of the case, are not proper subjects for admission. *Id.* advisory committee's note.

9

In response to the plaintiffs' requests, Kim has admitted
many applications of law to fact.  He has admitted that the
plaintiffs' invoices contained language sufficient to preserve
trust benefits under PACA.  ECF No. 23-3 at 6 ¶ 10.  He also has
admitted that "as an officer, director, shareholder, or employee
of Kimberly's Farm," he had a duty to ensure that Kimberly's
Farm properly preserved the PACA trust assets.  *Id.* at 6-7 ¶ 14.
Kim has admitted that he had knowledge of and responsibility for
Kimberly's Farm's duties as trustee and its financial dealings.
*Id.* at 7 ¶¶ 15-16.  Finally, he has admitted that he and
Kimberly's Farm breached their fiduciary duties as PACA
trustees.  *Id.* at ¶¶ 17-18.

Kim's admissions are attached to the plaintiffs' opposition
to Kim's cross-motion for summary judgment and reply to their
motions for summary judgment.  ECF No. 23.  The admissions were
not served on the plaintiffs until June 4, 2012, well into
summary judgment briefing.  *See* ECF No. 23-3 at 9.  Although
materials attached to reply briefs are generally not considered
by courts, *see Mathewson v. Lincoln Nat'l Life Ins. Co.*, 518 F.
Supp. 2d 657, 661 n.4 (D.S.C. 2007), the relevant brief in this
case is an opposition and a reply.  The briefing schedule
allowed Kim the last word, which he did not take.  *See* ECF No.
17.  Because he did not object to the requests for admission, as
required by Fed. R. Civ. P. 36(3), (5), he waived any potential

10

objection. As Kim is the originator of the admissions and had the opportunity to explain them, the Court will consider the admissions against Kim. *See* Fed. R. Civ. P. 36(b).

      3.   The PACA Notice Requirements

Kim asserts that summary judgment may not be granted on the plaintiffs' claims because there is a genuine dispute whether the invoices were sent to Kim within the time authorized under PACA. ECF No. 22 at 5. The plaintiffs argue that the record shows that there is no dispute, and they complied with the notice requirements. *See* ECF No. 23-2 at 3-5.

Each of the plaintiffs has submitted an affidavit stating that it sent Kim the invoices. Kevin Baek, President of PLUS, affirmed that PLUS sent invoices to Kimberly's Farm on the shipment date, and there was no indication that any invoice was not received. ECF No. 18-4 ¶ 1, 14-15. John DiFeliciantonio, a partner in Ryeco, affirmed that each invoice was sent to Kimberly's Farm on or within three days of the sale of the produce, and there was no indication that any invoice was not received. ECF No. 19-4 ¶ 1, 14-15. Douglas Verner, general counsel of Guest Services, Inc., the sole member of Lancaster Foods, affirmed that each invoice was given to Kimberly's Farm at the time of delivery. ECF No. 20-4 ¶ 1, 14. Patricia Morris, bookkeeper for Chesser, affirmed that each invoice was mailed on or within three days of shipment, and there was no

indication that any invoice was not received.  ECF No. 21-4 ¶ 1,
13-14.  Kim has produced no evidence to the contrary, but
asserts that the plaintiffs have not shown that the invoices
were sent to Kim or to Kimberly's Farm or that the invoices were
sent with the produce.  ECF No. 22 at 6-7; *see* ECF No. 18-7 ¶
11.

The evidence shows that the invoices were mailed or given
to Kimberly's Farm.  *See* ECF Nos. 18-4 ¶ 14-15, 19-4 ¶ 14-15,
20-4 ¶ 14, 21-4 ¶ 13-14.  Mail sent is presumed delivered absent
strong evidence to the contrary.  *Bosiger v. U.S. Airways, Inc.*,
510 F.3d 442, 452 (4th Cir. 2007).  Kim has provided no evidence
to the contrary.  Accordingly, there is no genuine dispute of
material fact, and the Court may determine whether the
plaintiffs' notices complied with PACA.

Kim has admitted that the invoices properly invoked the
PACA trust protections.  ECF No. 23-3 at 6 ¶ 10.  The invoices
support this admission.  PLUS, Ryeco, and Lancaster Foods all
specified terms of 30 days or less.  *See* 7 C.F.R. § 46.46(e)(2);
ECF Nos. 18-5, 19-5, 20-5.  Chesser's invoices do not state
payment terms and, thus, include the statutory ten day payment
period.  *See* 7 C.F.R. § 46.22(aa); ECF No. 21-5.  Finally, each
invoice states that the produce is subject to the PACA trust.
*See* 7 C.F.R. § 46.46(f)(3)(i); ECF Nos. 18-5, 19-5, 20-5, 21-5.
As the invoices were timely sent or given to Kimberly's Farm and

12

contain the necessary elements, the produce delivered is subject to the PACA trust.  *See* 7 C.F.R. § 46.46(e)-(f).

   4. Kim's Personal Liability

  The plaintiffs assert that Kim is personally liable for the trust assets held by Kimberly's Farm.  *See* ECF No. 18-2 at 11. Kim argues that his personal liability "would make corporations useless."[11]  ECF No. 22 at 7.

  Under PACA, purchasers are primarily liable for the trust. *Golman-Hayden Co. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000).  Although the Fourth Circuit has yet to address the issue, some courts of appeal have held that "individual shareholders, officers, or directors of a corporation who are in a position to control trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA."[12]

  Kim has admitted that he and Kimberly's Farm breached their fiduciary duties by not preserving the PACA trust assets.  ECF No. 23-3 at 7 ¶ 18.  Kim was the sole shareholder, director, officer, and individual responsible for management of Kimberly's

---

[11] Kim presents this argument in his summary judgment motion. *See* ECF No. 22 at 7; *infra* Part II.C.1.

[12] *Golman-Hayden Co.*, 217 F.3d at 351; *see, e.g.*, *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705-6 (2d Cir. 2007); *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 421 (3d Cir. 2005); *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997).

Farm. ECF No. 18-7 ¶¶ 15-18. As such, he was in a position "to control the company's PACA trust assets." *Golman-Hayden*, 217 F.3d at 351. As he did not direct the company to preserve the trust assets, he is, as a matter of law, personally liable under PACA. *Id*.

     5.   Damages

The plaintiffs assert that they are entitled to the full amount of their unpaid invoices. *See, e.g.*, ECF No. 18-2 at 14-15. Kim asserts that damages should be calculated based on the remaining, uncollected receivables.[13] ECF No. 22 at 8-9.

Uncollected accounts receivable "are insufficient to satisfy the PACA liability because they are not 'freely available' for 'prompt payment' to trust beneficiaries as the PACA regulations require." *Coosemans*, 485 F.3d at 707 (*citing* 7 C.F.R. § 46.46(d)(1), (e)). The receivables from EE Mart and Fresh World have not been collected. ECF No. 18-7 ¶ 20. As they are not freely available, Kim is liable to the plaintiffs for the full amount owed. *Coosemans*, 485 F.3d at 707.

The plaintiffs seek the Maryland legal rate of prejudgment interest--six percent per annum simple interest calculated from

---

[13] Kim affirmatively argues this in his cross motion for summary judgment as to damages. ECF No. 22 at 8; *see infra* Part II.C.2.

14

the date due date of the last invoice.[14]  *E.g.*, ECF No. 18-9; *see* Md. Const. art. III, § 57; Md. Code Ann. Com Law § 12-102.  Kim has not opposed this calculation.  Accordingly, the plaintiffs are entitled to the following damages:

| Plaintiff | Amount | Date from which 6% interest is calculated[15] |
|---|---|---|
| PLUS | $87,673.60 | April 9, 2011 |
| Ryeco | $58,753.50 | March 21, 2011 |
| Lancaster Foods | $147,056.20 | April 16, 2011 |
| Chesser | $22,501.50 | April 2, 2011 |

C.   Kim's motion

Kim asserts that as a matter of law (1) he cannot be held personally liable under PACA and (2) even if he is ultimately liable, his liability should be reduced by Kimberly Farm's accounts receivable.  ECF No. 22 at 8-9.  The plaintiffs assert that (1) PACA extends liability to individuals who control the trust assets and (2) Kim's accounts receivable argument is without authority.  ECF No. 23-2 at 8-9.

1.   Kim's Personal Liability

Kim relies solely on *Farm-Way Produce, Inc. v. Wayne L. Bowman Co.*, 973 F. Supp. 778 (E.D. Tenn. 1997), for the proposition that an individual is not liable for PACA trust

---

[14] This is less than the 18% per annum specified in the Ryeco and Lancaster Foods invoices.  *See* ECF Nos. 19-5, 20-5.

[15] The date is based on each plaintiff's last invoice and payment terms.

assets held by a corporation, arguing that such a rule would defeat the purpose of the corporate form. *See* ECF No. 22 at 7. *Farm-Wey* acknowledges, however, that nearly every case that had previously addressed the issue allowed recovery in certain situations from "individuals who were officers, shareholders, or other persons perceived by the courts to be in a 'fiduciary' position with respect to the PACA trust." *Farm-Wey*, 973 F. Supp. at 781. As the plaintiffs note, the *Farm-Wey* court determined that, regardless of the standard for determining a fiduciary, the *Farm-Wey* defendant had not breached any duty, as the produce was sold for a total loss. *See id.* at 785; ECF No. 23-2 at 7 n.3.

Although the Fourth Circuit has not addressed personal liability under PACA, other courts of appeal have held that "individual shareholders, officers, or directors of a corporation who are in a position to control trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA."[16] Although Kim is correct that PACA does not expressly create individual liability, *see* ECF No. 22 at 7, "[i]ndividual liability in the PACA context is not derived from the statutory language, but from common law

---

[16] *Golman-Hayden Co. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000); *see, e.g., Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705-6 (2d Cir. 2007); *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 421 (3d Cir. 2005); *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997)

breach of trust principles." *Weis-Buy*, 411 F.3d at 421.

Accordingly, Kim may be held personally liable under PACA, if a

breach of fiduciary duty is shown.

      2.   Accounts Receivable

Kim relies on *Golman-Hayden* for the proposition that his

secondary liability should be reduced by the amount of the

accounts receivable due to Kimberly's Farm.  ECF No. 22 at 8-9.

The plaintiffs contend that *Golman-Hayden* refers to the funds

collected from the accounts receivable.  ECF No. 23-2 at 8-9.

In *Golman-Hayden*, the bankrupt company held funds in trust

for the plaintiffs derived from the accounts receivable.

*Golman-Hayden*, 217 F.3d at 349.  The court held that the

individual defendant was personally liable for the shortfall

after the deduction of those funds.  *Id.* at 351-52.  There was

no discussion in *Golman-Hayden* about whether there were any

uncollectable accounts receivable nor what effect that would

have had on the amount of damages.

Kim requests that the amount of damages owed to the

plaintiffs be reduced by the $222,122.00 in receivables that he

is owed by EE Mart and Fresh World.  ECF No. 22 at 8-9.  Under

PACA, the receivables from the sale of the produce are part of

the trust corpus for the benefit of the sellers.  *See* 7 U.S.C. §

499e(c)(1); *Nickey Gregory* 597 F.3d at 607.  However,

uncollected accounts receivable "are insufficient to satisfy the

PACA liability because they are not 'freely available' for 'prompt payment' to trust beneficiaries as the PACA regulations require." *Coosemans*, 485 F.3d at 707.  The receivables from EE Mart and Fresh World have not been collected.  ECF No. 18-7 ¶ 20.  As they are not freely available, Kim is liable to the plaintiffs for the full amount owed.  *Coosemans*, 485 F.3d at 707.  Kim is not entitled to summary judgment.

III. Conclusion

For the reasons stated above, the plaintiffs' motions for summary judgment will be granted.  Kim's cross motion for summary judgment will be denied.

_____12/13/12_____
Date

_____
William D. Quarles, Jr.
United States District Judge

18